**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| JAMES DOUGLAS WEBB and LATASHA LUKE,<br><br>Plaintiffs,<br><br>v.<br><br>TONY PERKINS,<br><br>Defendant. | Civil Action<br>File No. ______________________<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

In May 2025, the City of Enigma hired Tony Perkins as its chief of police. When Perkins was hired, he was told that he could drive the City-owned police cruiser and take it home at night, but that the cruiser was subject to being tracked. Five months later, the City began tracking its cruiser.

Chief Perkins did not like the City tracking its own vehicle, so he arrested the acting mayor and the city clerk. On October 8 and October 14, 2025, Chief Perkins swore out eight arrest warrants against Acting Mayor James Douglas (Doug) Webb and City Clerk Latasha Luke, charging them with felony eavesdropping, felony criminal solicitation, felony violation of oath of office, misdemeanor stalking, and conspiracy. Every one of those charges traced back to a single GPS unit on a city-owned police cruiser.

It is not a crime for a city to track its police cruisers. Chief Perkins illegally took out felony arrest warrants against Mayor Webb and Ms. Luke as an act of personal retribution because he did not like his employer tracking its property. Plaintiffs bring this civil action against Defendant Perkins, individually, pursuant to 42 U.S.C. § 1983 and the laws of Georgia, seeking redress for their arrest and prosecution on warrants procured through false, misleading, and legally insufficient affidavits.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff James Douglas Webb is a natural person and citizen of the United States of America, residing in Georgia, and is of full age.

2. Plaintiff Latasha Luke is a natural person and citizen of the United States of America, residing in Georgia, and is of full age.

3. Defendant Tony Perkins is an individual who was, at all times relevant to the allegations in this complaint, the Chief of Police of the City of Enigma, Georgia, acting under color of law.

4. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

5. This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343, as the action arises under the Constitution and laws of the United States.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

7. Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims arose in this district and division, and because, on information and belief, Defendant lives within the boundaries of the Valdosta Division of the Middle District of Georgia.

## FACTS

### Tony Perkins's Hiring and the GPS Device

8. The City of Enigma is a municipality in Berrien County, Georgia, with a population of fewer than 1,500 people.

9. In or about May 2025, the City of Enigma hired Defendant Tony Perkins as its Chief of Police.

10. At all times relevant to this complaint, Plaintiff Doug Webb was the Acting Mayor of the City of Enigma and Plaintiff Latasha Luke was the City Clerk.

11. Mayor Webb was among the officials responsible for hiring, supervising, and setting the terms of employment of the City's police chief.

12. When the City hired Chief Perkins, Mayor Webb and a City Council member told Perkins that his first months of employment would be a probationary period, that he could take his assigned patrol vehicle home after work if he wished, and that the vehicle was subject to being tracked.

13. Chief Perkins accepted employment on those terms.

14. The patrol vehicle assigned to Chief Perkins was owned by the City of Enigma. Chief Perkins did not own it.

15. The vehicle was a marked law enforcement vehicle, purchased with public funds, insured by the City, and operated for City business.

16. The City of Enigma had the authority to decide how its own vehicles were used and to monitor that use.

17. In or about late September 2025, a GPS tracking unit was placed on the City-owned patrol vehicle assigned to Chief Perkins.

18. The unit reported the location and movement of the vehicle. It did not overhear, transmit, or record any sound. It did not observe, photograph, videotape, or record any image. It did not intercept any conversation, telephone call, letter, or other communication.

19. The unit reported nothing except where the City-owned car was, and that car was driven almost entirely on public roads.

20. On October 1, 2025, Chief Perkins found the GPS unit. He opened a criminal investigation the same day.

**The Warrants Against Webb and Luke**

21. On October 8, 2025, Chief Perkins swore out seven arrest warrants, five against Mayor Webb and two against Ms. Luke.

22. He swore out an eighth warrant against Ms. Luke six days later, after both Plaintiffs had been arrested and released on bond.

23. All eight warrants arose from the City's use of a GPS unit to monitor its own police cruiser.

*Eavesdropping*

24. Perkins charged both Plaintiffs with felony unlawful eavesdropping or surveillance under O.C.G.A. § 16-11-62.

25. That statute prohibits overhearing or recording private conversations, intercepting messages, and observing or recording people in places where they have a reasonable expectation of privacy.

26. The provision addressed to surveillance applies only where a person uses a "device" to observe, photograph, or record the activities of another. O.C.G.A. § 16-11-62(2). Georgia law defines a "device" as an instrument used to overhear, record, intercept, or transmit sounds, or to observe, photograph, videotape, record, or transmit visual images. O.C.G.A. § 16-11-60(1).

27. A GPS unit that reports the location of a vehicle is not such a device. It captures neither sound nor images.

28. The statute also reaches other acts similar in nature to those it lists, where such acts invade the privacy of another. Each of the listed acts involves capturing a person's conversations, images, or activities in a private place. Reporting the location of a government vehicle traveling on public roads is not similar in nature to any of them.

29. The affidavit against Mayor Webb alleged that he attached a GPS unit to "a law enforcement vehicle that is assigned to Chief Tony Perkins," without Perkins's knowledge or consent. It alleged nothing further.

30. The affidavit against Ms. Luke alleged that she downloaded a GPS application to her cellular telephone and sent vehicle locations to another telephone. It did not allege that she placed the device on the cruiser or asked anyone else to do so.

31. Georgia law does not make it a crime to place a tracking device on a city-owned vehicle.

*Stalking*

32. Perkins charged Mayor Webb with stalking under O.C.G.A. § 16-5-90.

33. The affidavit alleged that Mayor Webb placed Perkins under surveillance by attaching the GPS unit to the cruiser "for the purpose of harassment and intimidation."

34. Stalking under Georgia law requires a "pattern of harassing and intimidating behavior," not an instance of surveilling another person.[1]

35. The affidavit described a single act rather than a pattern of harassing and intimidating behavior.

---

[1] See, e.g., Autry v. State, 701 S.E.2d 596, 599 (Ga. Ct. App. 2010) (reversing stalking conviction due to absence of a "pattern of harassing and intimidating behavior" where the state charged the defendant with "follow[ing] [the victim] in her vehicle to a store and watch[ing] her going into and out of said store").

36. Stalking under Georgia law also only criminalizes conduct that "causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family" and that "serves no legitimate purpose."[2]

37. The affidavit made no allegation that Perkins feared for anyone's safety. Nor did it address legitimate purpose, although the vehicle belonged to the City and the City had an interest in knowing where it was.

*Solicitation and Conspiracy*

38. Perkins charged both Plaintiffs with criminal solicitation and with conspiracy to commit a crime, under O.C.G.A. §§ 16-4-7 and 16-4-8. Each affidavit identified unlawful eavesdropping and stalking as the underlying offense.

39. Neither affidavit described a request, an agreement, or an overt act. Each rested on the same GPS monitoring described in the eavesdropping and stalking warrants.

[2] See, e.g., Everett v. Parker, 370 Ga. App. 828, 899 S.E.2d 355 (2024) (reversing a stalking protective order where a surreptitious tracking device was not shown to have placed the petitioner in reasonable fear for his safety); Murphy v. O'Keefe, 348 Ga. App. 344, 346, 822 S.E.2d 839, 840 (2019) (reversing stalking protective order where victim was "uncomfortable" rather than in reasonable fear for her safety).

40. Because that monitoring was not a crime, there was no offense to solicit and none to conspire to commit.

*Violation of Oath*

41. Perkins charged Mayor Webb with felony violation of oath of public office under O.C.G.A. § 16-10-1.

42. The affidavit alleged that Mayor Webb violated the terms of his oath in that he "did violate the law of the State of Georgia."

43. It did not identify the oath Mayor Webb had taken, any term of that oath, or the law he was alleged to have violated.

44. Georgia law at the time permitted a charge of violating an oath of office only where the violation was predicated on a felony or a misdemeanor of a high and aggravated nature. O.C.G.A. § 16-10-1(c). The affidavit identified neither.

45. When he applied for these warrants, Perkins knew that the cruiser belonged to the City, that the City had authorized the tracking, and that he had been told at the time of his hiring that the vehicle was subject to being tracked.

46. None of this information appeared in the affidavits he presented to the magistrate.

## The Arrests and Dismissals

47. Mayor Webb was arrested on October 10, 2025, and booked into the Berrien County Jail.

48. Bond was set separately on each of his five warrants: $1,500 on the conspiracy charge, $1,500 on the stalking charge, and $2,500 each on the criminal solicitation, violation of oath, and unlawful eavesdropping charges.

49. Mayor Webb was released on October 11, 2025, after posting bond on all five.

50. Ms. Luke was arrested on October 10, 2025, and was released on October 11, 2025, after posting a $4,000 property bond on the conspiracy and criminal solicitation charges.

51. Three days after Ms. Luke bonded out, Chief Perkins swore out the additional eavesdropping warrant against her.

52. Ms. Luke was arrested a second time on October 14, 2025, and was processed at the Berrien County Jail at 2:40 that afternoon. She was required to post a second bond, of $2,500, to secure her release.

53. The arrests were reported by regional news outlets, which identified Mayor Webb and Ms. Luke by name and by the public offices they held. The reporting circulated in the community in which both Plaintiffs lived and served.

54. While the charges were pending, Chief Perkins discussed the case with a television reporter, stating that Plaintiffs "made some really bad decisions, and those decisions they're going to have to live with."

55. On July 29, 2026, the charges against Mayor Webb and Ms. Luke were dismissed.

## COUNT I

### 42 U.S.C. § 1983 Malicious Prosecution

56. The preceding paragraphs are incorporated herein by reference as though fully set forth.

57. Chief Perkins obtained the arrest warrants described above, and he was the complaining witness on each of them.

58. Each warrant application failed to establish probable cause and relied on misstatements and omissions necessary to support the warrant.

59. Chief Perkins knew that each warrant application failed to establish probable cause and relied on misstatements and omissions necessary to support the warrant.

60. The warrant applications for Unlawful Eavesdropping or Surveillance failed to establish probable cause on their face. Webb's application described attaching a location-reporting device to a City-owned vehicle. Luke's described downloading an application and transmitting location information. Neither alleged interception of communications, sound, visual images, observation in a private place, or facts satisfying O.C.G.A. § 16-11-62.

61. The warrant applications for Unlawful Eavesdropping or Surveillance relied on misstatements and omissions necessary to support the warrants; they represented that placing a GPS unit on a government vehicle was a crime when it was not, and they omitted that Chief Perkins had been told, when he was hired, that the vehicle was subject to being tracked.

62. The warrant application for Stalking failed to establish probable cause on its face; it did not allege that Chief Perkins was placed in reasonable fear for his safety, did not allege a pattern of harassing and intimidating behavior, and did not allege that the conduct served no legitimate purpose.

63. The warrant application for Stalking relied on misstatements and omissions necessary to support the warrant; it asserted that the conduct was "for the purpose of harassment and intimidation" while omitting that the vehicle belonged to the City, and that Chief Perkins had been told the vehicle was subject to being tracked.

64. The warrant applications for Criminal Solicitation and Conspiracy to Commit a Crime failed to establish probable cause on their face because each depended entirely on the eavesdropping and stalking offenses, and neither of those offenses was committed. The solicitation applications failed for the further reason that O.C.G.A. § 16-4-7 requires the solicited conduct to constitute a felony, and the conduct described was not a crime at all.

65. The warrant application for Violation of Oath of Public Office failed to establish probable cause on its face; it identified no oath, no term of any oath, and no law that Mayor Webb was alleged to have violated. The application failed for the further reason that O.C.G.A. § 16-10-1(c) permits the charge only where the violation rests on a felony or a misdemeanor of a high and aggravated nature, and the affidavit identified no such predicate.

66. Chief Perkins made these misstatements and omitted these facts either intentionally or with a reckless disregard for the truth.

67. If Chief Perkins had given the magistrate a complete and truthful recitation of the facts, there would not have been probable cause sufficient to justify any of the arrest warrants.

68. A reasonable officer in Chief Perkins's position would have known that these warrant applications failed to establish probable cause.

69. The criminal proceedings against Mayor Webb and Ms. Luke terminated in their favor.

70. Chief Perkins's conduct in procuring the warrants and causing Plaintiffs' arrests violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizures and not to be deprived of liberty without due process of law.

71. As a direct and proximate result of Chief Perkins's actions, Mayor Webb and Ms. Luke suffered damages, including loss of liberty, the cost of bond and of criminal defense counsel, emotional distress, humiliation, and reputational harm.

## COUNT II

**Malicious Prosecution Under Georgia Law (O.C.G.A. § 51-7-40)**

72. The preceding paragraphs are incorporated herein by reference as though fully set forth.

73. Chief Perkins caused criminal prosecutions to be carried on against Mayor Webb and Ms. Luke.

74. Those prosecutions were carried on under arrest warrants that Chief Perkins swore out before a magistrate of the Berrien County Magistrate Court.

75. Chief Perkins acted without probable cause.

76. Chief Perkins acted with malice.

77. Chief Perkins was the alleged victim of the offenses he charged, the only investigator of those offenses, and the sole affiant on every warrant.

78. Under O.C.G.A. § 51-7-44, a total lack of probable cause is a circumstance from which malice may be inferred.

79. The prosecutions terminated in Plaintiffs' favor. The cases were dismissed without any plea, compromise, concession, or adverse adjudication.

80. Chief Perkins acted with actual malice and with actual intent to cause injury, and he is therefore not entitled to official immunity.

81. As a direct and proximate result of Chief Perkins's actions, Mayor Webb and Ms. Luke suffered damages.

## Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court issue the following relief:

1. That process issue in accordance with the law;

2. That the Court award Plaintiffs compensatory and general damages against Defendant Perkins in an amount to be determined by the jury;

3. That the Court award Plaintiffs punitive damages against Defendant Perkins in an amount to be determined by the enlightened conscience of the jury;

4. That the Court award costs of this action, including attorneys' fees, to Plaintiffs, pursuant to 42 U.S.C. § 1988 and other applicable laws regarding such awards;

5. That the Court award Plaintiffs such other and further relief as it deems just and necessary; and

6. That Plaintiffs be granted a trial by jury.

This 17th Day of September, 2026

**ESHMAN BEGNAUD, LLC**

/s/ Mark Begnaud
Mark Begnaud
Georgia Bar No. 217641
mbegnaud@eshmanbegnaud.com
Michael J. Eshman
Georgia Bar No. 365497
meshman@eshmanbegnaud.com

315 W. Ponce De Leon Ave
Suite 775
Decatur, GA 30030
404-491-0170